## INTERNATIONAL-GREAT NORTHERN R. CO. v. TEXAS & N. O. R. CO. et al.

### No. 9815.

Court of Civil Appeals of Texas. Galveston.

March 3, 1933.

Rehearing Denied April 20, 1933.

Blanchard & Woodul, of Houston, for appellant.

Baker, Botts, Andrews & Wharton, John P. Bullington, Jesse A. Raymond and Tom M. Davis, all of Houston, for appellees.

PLEASANTS, Chief Justice.

This is a suit by appellant to recover from appellees the sum of approximately $6,000 alleged to be due it by appellees as the reasonable costs of services rendered them by appellant at their request.

Plaintiff's petition alleges in substance that on October 23, 1901, it, through its predecessors, was operating a railroad in Harris and Brazos counties, Tex., as well as other counties of Texas, and that on said date the Houston & Texas Central Railroad Company was operating a railroad in said counties; that on or about said date the plaintiff's predecessors, desiring to cross the tracks of the Houston & Texas Central Railroad Company near College Station at grade with its track, entered into a contract with the said Houston & Texas Central Railroad Company, which contract was approved by the Railroad Commission of Texas, and that by the terms of said contract, it became the duty of the plaintiff's predecessors and its successors in title, the appellant herein, to install, maintain, and operate at its own expense an interlocking plant making safe the crossing of said railroads at or near College Station; that this was done, and that on or about February 28, 1926, the appellant was operating the various interlocking devices and signals from an interlocking tower, there being twenty-one functions involved in said plant at said time; that by reason of the situation then existing, the appellant safely operated said plant by using two tower men on said plant eight hours a day each, which was all the service then required to make said crossing safe; that about said date the Houston & Texas Central Railroad Company, for its own convenience and benefit, extended a side track and a passing track in the vicinity of said interlocking plant, so as to bring said two tracks within close proximity to said interlocking plant, and said Houston & Texas Central Railroad Company, at its own expense, connected up said two relocated tracks with said interlocking tower, requiring six additional functions, and by reason thereof requested appellant to give continuous service at said interlocking tower, thus requiring the employment of the third tower man, and

requested the appellant to maintain and operate said additional functions controlling said relocated tracks. Appellant alleged that the Houston & Texas Central Railroad Company, by reason of such matters, contracted to pay to appellant the reasonable cost of such additional operation and maintenance, or in the alternative that there was an implied obligation to pay for same.

It is alleged that the appellee Texas & New Orleans Railroad Company, by lease agreement, took over the operation of the railroad of the appellee Houston & Texas Central Railroad Company, and assumed and bound itself to pay any and all liabilities incurred by Houston & Texas Central Railroad Company theretofore and to operate the line of the Houston & Texas Central Railroad Company; that the reasonable value of the operation and maintenance done for the account of the appellee Houston & Texas Central Railroad Company was $1,177.15; and that subsequent to the operation of the properties by that company, the value of the operation and maintenance done for the account of the appellee Texas & New Orleans Railroad Company was $4,954.66, for all of which appellant prayed judgment, together with interest at 6 per cent. per annum from the date of each monthly bill rendered to the appellees by appellant.

Appellees answered by general demurrer and general denial.

The case was tried before the court without a jury and the court rendered judgment on December 17, 1931, in favor of the appellant and against the appellee Texas & New Orleans Railroad Company for $367.95, with interest, covering cost of maintenance of the additional six functions made necessary by the relocation of said tracks.

Plaintiff, appellant here, requested the court to file findings of fact and conclusions of law, which the court did, finding in effect that appellant was entitled to the cost of maintenance but not to the additional cost of operation arising by reason of the additional functions.

The facts found by the trial court are as follows:

"I. On October 23, 1901, the Houston & Texas Central Railroad Company and the International-Great Northern Railroad Company entered into a contract whereby the International-Great Northern Railroad Company was given the right to cross at grade with its main line track, the track of the Houston & Texas Central Railroad Company at a point south and near College Station; by this contract the International-Great Northern Railroad Company was obligated to install an interlocking device at said crossing and to put same in with all appurtenances and appliances in connection therewith, at its own cost and expense and at its own cost and expense to forever operate and maintain

the same in a careful and prudent manner for the greatest protection possible of both parties to the contract. This the International-Great Northern Railroad Company complied with down to the time of the matters arising during the month of March, 1926. This contract was made subject to the approval of the Railroad Commission of Texas, and was to be given force and effect from and after the approval of said Commission, which was duly given by an order entered by the Railroad Commission on October 24, 1901, the contract being recited in the order.

"II. The International-Great Northern Railroad Company has succeeded to the rights and liabilities of the International-Great Northern Railroad Company and its successors, under the contract of October 23, 1901. The Texas & New Orleans Railroad Company, under a lease contract effective March 1, 1927, succeeded to the rights and obligations of the Houston & Texas Central Railroad Company under the contract above referred to.

"III. That during the early part of March, 1926, the Houston & Texas Central Railroad Company, for its own convenience, rearranged or relocated two certain railroad tracks, one a passing track and one a switching track, neither of which tracks are crossed by the main line track or any other track of the International-Great Northern Railroad Company, and in so rearranging and relocating said tracks, such tracks were brought closer to the interlocking tower or plant and said two tracks and the devices controlling the operation of said two tracks were connected with the interlocking plant being maintained and operated by the International-Great Northern Railroad Company under the aforesaid contract.

"IV. That prior to the relocation or rearrangement of said two tracks by the Houston & Texas Central Railroad Company, there were required in the operation of the interlocking tower and the tracks of the two contracting parties and the safety devices necessary to such operation, what were known or designated in railroad parlance, as twenty-one (21) separate and distinct functions, which said functions were controlled by the operator on duty in the interlocking tower. That due to the relocation and rearrangement of said two tracks by the Houston & Texas Central Railroad Company, and the connection of same with the said interlocking plant or tower, there was required an additional six (6) functions, and therefore, after said rearrangement and relocation and said installation, there were twenty-seven (27) functions involved in operating from said interlocking tower.

"V. That immediately prior to the inclusion of the six (6) additional functions, the operating company, International-Great Northern Railroad Company, with the permission of the Houston & Texas Central Railroad Company, was using only two (2) operators in the tower. Each of said operators worked eight (8) hours and received for such eight (8) hours work the sum of One Hundred Twenty-Eight and 95/100 Dollars ($128.95) a month. Such operators did not work at the same hours but operated the tower a total of sixteen (16) hours out of each twenty-four (24) hours of the day. When the last man went off duty, all tracks and safety devices were manipulated so as to give the Houston & Texas Central Railroad Company through right of way over its main line track crossed by the International-Great Northern Railroad track, in this manner giving the trains of the Houston & Texas Central Railroad Company safe right of way at the crossing during said eight (8) hour period. If trains on the International-Great Northern Railroad Company track were to pass through said crossing during the period when a towerman was not on duty, either a towerman had to be called or one of the crew on the train would go to the tower and operate same, and after the said train had crossed the crossing, the signals and devices and tracks would be so lined up as to leave the Houston & Texas Central trains the right of way.

"VI. Due to the fact that the relocation and/or rearrangement of the two (2) additional tracks of the Houston & Texas Central Railroad Company and the manner of installation in connection with said interlocking plant, such two (2) tracks could not be left open as could be the Houston & Texas Central main line track, and by reason of the necessity for switching over said two (2) tracks at all hours, it became necessary to again have continuous service at the interlocking tower, at which time the Houston & Texas Central Railroad Company demanded that the International-Great Northern Railroad Company again give such continuous service as had been previously given up to a short while before the installation of the new functions when the Houston & Texas Central Railroad Company gave the International-Great Northern Railroad Company permission to suspend continuous service, and in accordance with such demand the International-Great Northern Railroad Company again employed a third man for duty on such tower so as to give continuous service and such condition has existed down to the date of the trial.

"VII. I find that from the date of the original contract relating to the interlocking tower down to some time prior to the changes made in the tracks in March, 1926, the International-Great Northern Railroad Company and/or its predecessors in interest gave continuous service at the interlocking tower and in giving such continuous service used three (3) men in such tower in eight (8) hour

shifts. I find that due to changes in the schedule of the train service of the International-Great Northern Railroad Company trains of that company rarely passed over its main line during the eight (8) hour shift from 11:00 P. M. to 6:00 A. M. and that between such hours there was no train of the International-Great Northern Railroad Company regularly scheduled to pass over its main line and that only occasionally extra trains were run during such hours. I find that because of this change in schedules the International-Great Northern Railroad Company requested permission from the Houston & Texas Central Railroad Company to suspend tower service from 11:00 P. M. to 6:00 A. M. and that the Houston & Texas Central Railroad Company acceded to such request and gave its permission to such change being made without, however, committing itself as to the future, and that after receiving such permission the International-Great Northern Railroad Company removed the operator who had been working the tower on the shift from 11:00 P. M. to 6:00 A. M. and that during those hours the tower employee of the International-Great Northern Railroad Company, on leaving the tower, would leave the tracks lined up for first use by the Houston & Texas Central Railroad Company, as stated in paragraph V hereof, and that when it was necessary to use the crossing during the period from 11:00 P. M. to 6:00 A. M. the tower was operated substantially in the manner set out in the last portion of paragraph V hereof.

"VIII. I further find that the relocation, installation and/or rearrangement of said tracks by the Houston & Texas Central Railroad Company in 1926, were in nowise for the benefit of the International-Great Northern Railroad Company, but, on the contrary, were for the sole benefit of the Houston & Texas Central Railroad Company and its successors in interest.

"IX. The Houston & Texas Central Railroad Company in constructing or rearranging and relocating said tracks in 1926 did so at its own expense and bore the costs thereof, including that necessarily involved in connecting up such tracks and other appropriate operating devices with the interlocking tower, standing all expense of installation of the required six (6) extra functions.

"X. It is agreed by the parties that during the operation by the Houston & Texas Central Railroad Company that line did the maintenance work necessarily required by the installation of said additional functions but that the International-Great Northern Railroad Company since September, 1927, to the time of the trial, did maintenance work necessarily involved with respect to said six (6) additional functions of the value of the sum of Three Hundred Sixty-Seven and 95/100 Dollars ($367.95)."

At the request of appellant, the court made the further fact finding: "I further find that by reason of the reconstruction and relocation of the two said railroad tracks referred to in Findings of Fact III, on file herein, it was necessary for the plaintiff, International-Great Northern Railroad Company, to employ a third towerman which it did, at a cost of One Hundred Twenty-eight and 95/100 ($128.95) Dollars per month, and that said Company has maintained such towerman from the time of installation down to date of trial and has paid the cost thereof."

The contract under which appellees claim that appellant is obligated to perform the services for the value of which this suit is brought, provides, in section 2 thereof: "Said interlocking devices shall be in all things and in every particular satisfactory to the party of the first part (appellee) both as to the make and the construction thereof, and as to the equipment and operation thereof, and shall be a strictly modern, first-class, up-to-date interlocking device, providing the greatest safety practicable in its construction and in all of its details."

Section 3 provides, in part, as follows: "The party of the second part will, at its own cost and expense, forever operate and maintain the same (the interlocking devices at the crossing, and each and every part thereof, and all appurtenances and appliances in connection therewith) in a careful and prudent manner for the greatest protection possible of both parties to this contract, in the joint and mutual interest of both parties hereto, and this obligation shall be a continuing obligation upon the party of the second part, its successors and assigns, so long as said crossing or any grade crossing at or near either of said points shall exist."

The statute in force at the time this contract was made (Acts 1901, c. 89, p. 255) provides:

"Sec. 3. In case any railway company shall hereafter seek to cross at grades with its track or tracks, the track or tracks of another railroad, the railroad seeking to cross at grade shall be compelled to interlock, or protect such crossings by safety devices to be designated by the Railroad Commission and to pay all costs of appliances together with the expense of putting them in; provided, that this act shall not apply to crossings of side tracks.

"Sec. 4. Whenever interlocking or other safety devices are constructed and maintained in good order to the satisfaction of the Railroad Commission in compliance with Sections 2 and 3 of this act, then and in that case it shall be lawful for the engines and trains of such railroad or railroads to pass over such crossings without stopping."

All the provisions of the statute above cited are substantially embodied in article 6502, Revised Statutes (1925).

Prior to the execution of this contract a suit had been instituted in the district court of Harris county by the Houston & Texas Central Railroad Company to prevent appellant's predecessor, who thereafter made the contract with appellees' predecessor above named, from making the grade crossing then proposed to be made by it. In this situation the contract in question was executed, submitted to and approved by the Railroad Commission, and has ever since been acted upon by all of the parties at interest.

■ We agree with the trial judge that appellant "both by the express terms of such contract and by the practical construction of the parties, was required to give continuous service at such interlocking plant by having someone on duty twenty-four hours each day to operate the same when it became necessary to do so and that the International-Great Northern Railroad Company was and is obligated under such contract to maintain three men on duty in said tower at its own cost and expense so long as proper operation requires three men to operate properly said tower continuously for twenty-four hours each day."

The amount in issue in this case being the cost of the additional operation of the interlocking device, this conclusion determines the disposition of this appeal.

■ It may be that appellant was not entitled under the contract to recover from appellees the cost of maintenance of the six additional functions installed by the appellee Texas & New Orleans Railroad Company, but as appellees acquiesced in this portion of the judgment, the question is not now before us. Such acquiescence is certainly no ground for the contention that appellees should also be held responsible for the additional cost of operating the interlocking plant, in the face of the express provisions of the contract before set out.

We think the evidence amply justifies the conclusion that the relocation and extension of appellee Texas & New Orleans Railroad Company's side tracks was a reasonable exercise of its duty to furnish adequate transportation facilities, and was done in a careful and proper manner. This relocation and extension having brought the connections of these side tracks with appellees' main line track within the limits of the interlocking plant, appellant was bound, under its contract, to protect its crossing of appellees' track by a sufficient operation of the interlocking plant.

It cannot be reasonably contended that the contract should be held restricted to the needs and conditions of appellees' railroad tracks as they existed at the date of the contract, but by its express terms the contract was intended to meet the reasonable changing transportation necessities of either of the parties, and the fact that the relocation of appellees' side tracks was made for their sole benefit is immaterial. Appellees' legal rights under their contract cannot be altered or impaired because they alone were benefited by their exercise of such rights. 1 Texas Jurisprudence, page 628; Ellis v. Valentine, 65 Tex. 532; Roberts v. Clark (Tex. Civ. App.) 103 S. W. 417.

What we have said required an affirmance of the judgment, and it has been so ordered.

Affirmed.